UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANCISCO JAVIER LINARES
MUNOZ,

      Petitioner,

  v.                          Case No.:  2:26-cv-01181-SPC-DNF

CHRIS ROBERTS *et al.*,

      Respondents,

                                 /

## OPINION AND ORDER

Before the Court is Francisco Javier Linares Munoz's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 7), and Linares Munoz's reply (Doc. 8).  For the below reasons, the Court grants the petition.

Linares Munoz is a native and citizen of El Salvador.  He first entered the United States in 2015 and was promptly removed under an expedited order of removal.  He crossed the border twice in 2016 but was caught and removed each time.  Linares Munoz entered the United States again in 2021, and he has remained in the United States since then.  He has a pregnant U.S. citizen wife and no criminal history.

On April 5, 2026, a Lee County Deputy Sheriff arrested Linares Munoz based on suspicion he entered the U.S. illegally.  The deputy took Linares Munoz to the Lee County jail and contacted Immigration and Customs

Enforcement. ICE officials then issued an I-205 warrant of removal/deportation and a I-871 Notice of Intent/Decision to Reinstate Prior Order.

Linares Munoz argues his warrantless arrest was unlawful, the I-871 reinstatement is defective, and the I-205 warrant is invalid. The Court agrees. First, Linares Munoz was arrested without a warrant. The deputy sheriff who arrested Linares Munoz did so under authority granted by 8 U.S.C. § 287(g), so he was required to "have knowledge of, and adhere to, Federal laws relating to the function" he performed for ICE. 8 U.S.C. § 287(g)(2). Federal regulation requires a warrant of arrest unless the immigration official "has reason to believe that the person is likely to escape before a warrant can be issued." 8 C.F.R. § 287.8(c)(2)(ii). The respondents do not claim the arresting deputy had the requisite probable cause here, and ICE did not issue the I-205 warrant until after the deputy arrested Linares Munoz and detained him at the Lee County Jail.

Second, ICE did not follow the proper procedure to reinstate the removal order. When determining whether a noncitizen is subject to reinstatement of a removal order, an immigration official "shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession." 8 C.F.R. § 241.8(a)(3). ICE uses a three-step process for reinstatement. First, the immigration officer completes the top part of the I-

2

871 form, which notifies the noncitizen of ICE's intent to reinstate the removal order and the reason for reinstatement.  Second, the officer gives the noncitizen an opportunity to make a statement contesting reinstatement and sign the Acknowledgement and Response section of the form.  Third, if an immigration officer determines the noncitizen is subject to reinstatement, the officer signs the Decision, Order, and Officer's Certification section of the form.  8 C.F.R. § 241.8(a)-(c).  This three-step process is not a mere formality.  The law provides exceptions from reinstatement for noncitizens who have applied for adjustment of status and noncitizens who express fear of returning to the country designated in the removal order.  8 C.F.R. § 241.8(d), (e).

The ICE officers did not follow the reinstatement procedure here.  The notice and decision sections—that is, the first and third steps—were signed on April 5, 2026. But the acknowledgement section—the second step—was not signed until April 6, 2026.  That shows ICE decided to reinstate the removal order before notifying Linares Munoz of the reason for reinstatement and giving him an opportunity to respond.  Thus, the ICE officers could not have "consider[ed] all relevant evidence," as required by 8 C.F.R. § 241.8, and Linares Munoz had no opportunity to contest the reason for reinstatement or demonstrate that an exception applied.  The reinstatement was defective. Since the post-arrest I-205 warrant was based on the defective reinstatement, it was both late and invalid, and Linares Munoz's warrantless arrest was an

unlawful seizure under the Fourth Amendment. *See Gopie v. Lyons*, No. 25-cv-5229-SJB, 2025 WL 3167130 at *3 (E.D.N.Y. Nov. 13, 2025) ("ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here.").

Also, ICE's detention of Linares Munoz without first following its reinstatement procedures violated the Fifth Amendment, which guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

4

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Linares Munoz's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. The government's actions gave Linares Munoz no opportunity to contest reinstatement or establish entitlement to an exception. For that reason, the Court recognizes significant value in the safeguards established by 8 C.F.R. § § 241.8. Third, while the government has a legitimate interest in executing removal orders, providing Linares Munoz notice and an opportunity to respond *before* reinstating a removal order would not have been overly burdensome.

Accordingly, it is hereby

**ORDERED**:

Francisco Javier Linares Munoz's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

(1)    The respondents shall release Linares Munoz within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by counsel when and where he may be collected.

(2)    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on April 30, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record